IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LARRY OATES | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-09-2428 |
| COMMISSIONER OF DOC, *et al.* | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Pending are Defendants' Motions to Dismiss or for Summary Judgment. Papers No. 13 and 15. Plaintiff sought and was granted a continuance for purposes of opposing the motions, but has failed to oppose the motions. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, said motions (Papers No. 13 and 15) SHALL BE GRANTED.

### Background

Plaintiff alleges he was denied hip replacement surgery when he was incarcerated.[1] He states he went to the hospital on December 26, 2008, where an MRI was performed, revealing severe osteoarthritis changes with bone-on-bone deterioration. Paper No. 1 at p. 4. He claims the condition of his hip was due to an accident that occurred while he was in Division of Correction (DOC) custody. *Id.* Although he continued to complain of pain after therapy and orthopedic follow-ups, he was denied outside specialist consultation for hip replacement surgery by Dr. Mathis and Ford. Plaintiff concludes that "without treatement and therapy I now have severe pain and numbness in my lower back, down my right leg and in my toes." *Id.* at p. 5. He

---

[1] Plaintiff filed the complaint on September 11, 2009, and was released from incarceration on October 9, 2009. Paper No. 6.

further alleges he is unable to lift or carry light weight items; is unable to stand; and is unable to walk for short distances. *Id.*

Defendants CMS, Ford and Mathis (hereinafter "medical Defendants"), assert that Plaintiff was evaluated by Dr. Oteyza after arriving at Eastern Correctional Institution (ECI) from Poplar Hill Pre-Release Unit (PHPRU) on October 1, 2008. Paper No. 13 at Ex. A. An x-ray of Plaintiff's right hip revealed "marked degenerative joint disease" which required evaluation by an orthopedic surgeon. Dr. Oteyza prescribed 50 mg, twice a day, of Ultram for Plaintiff's pain. On October 6, 2008, Dr. Aster Berhane referred Plaintiff to a physiatrist for evaluation, treatment and physical therapy to his right hip. *Id.*

On October 10, 2008, Plaintiff was evaluated by Defendant Ford because he had been pulled off his bunk bed, landing on his right hip and lower back. Ford noted in his evaluation of Plaintiff that he complained of pain when moving his right hip and with pressure to the hip. Plaintiff was admitted to the infirmary for observation and treatement. He was provided with an ice pack, as well as a walker to assist with walking. Plaintiff was also prescribed 30 mg of Toradol every six hours over a course of three days for treatment of his pain. *Id.*

While in the infirmary, Plaintiff complained of pain of varying degrees of severity as well as numbness in his right leg. On October 13, 2008, Dr. Mathis evaluated Plaintiff, noting he was able to get out of bed and walk with a walker. Dr. Mathis changed Plaintiff's pain medication to Ultram ER (extended relief) 100 mg each day and also ordered that Plaintiff be encouraged to stay out of bed, with or without the use of a walker, and to continue his physical therapy. On October 14, 2008, Dr. Mathis ordered that Plaintiff be given a cane and encouraged to use it instead of the walker. By October 16, 2008, Plaintiff could walk with the cane, and he was discharged back to his housing unit. *Id.* at Ex. A. On October 23, 2008, Plaintiff reported to

Ford that he was getting he medication as prescribed, still had persistent pain, and was able to walk with a cane without any problems. On October 31, 2008, Ford wrote an order for "lay-in meals" (meals delivered to Plaintiff's cell) effective until February 28, 2009. *Id.* On December 15, 2008, after Plaintiff's continued complaints of severe hip pain, Dr. Berhane ordered an MRI of Plaintiff's right hip. The MRI showed, among other findings: (1) severe probable osteoarthritic change of the right hip; (2) moderate joint effusions; and (3) bone-on-bone contact. *Id.*

On January 20, 2009, Ford requested evaluation and possible treatment for Plaintiff by an orthopedic surgeon. Ford also increasedPlaintiff's Ultram to 200 mg daily, and prescribed Tylenol Extra Strength 500 mg three times a day to further address Plaintiff's pain. *Id.* On January 23, 2009, Brian Harter and Robert T. Smith, M.D, the Utilization Management Medical Director for Wexford HealthServices, Inc. ("Wexford")[2], considered Ford's request. Dr. Smith noted that the request to send Plaintiff to an orthopedic surgeon, in anticipation of hip replacement surgery, would have to be presented to Dr. Sharon Baucom, the Medical Director for the Department of Public Safety and Correctional Services, for review and consideration. On January 27, 2009, after review, Dr. Baucom and Dr. Smith determined that appropriate care for Plaintiff was to provide conservative treatment which would include limiting Plaintiff's need to walk by providing lay-in meals; providing a cane to assist with his walking, and continuation of medication for pain management. Dr. Mathis informed Plaintiff of the plan on February 23, 2009, and advised him to return if his symptoms worsened. On March 2, 2009, Plaintiff was

---

[2] Wexford is the utilization review contractor for the State of Maryland. Wexford reviews and approves all requests by on-site and off-site consultants for certain medical devices and tests, among other things. When on-site or off-site consultants request or recommend certain medical treatment, Wexford's utilization review panel, consisting of Wexford's own health care providers, must give the final approval. CMS is not affiliated in any way with Wexford. Therefore, CMS has no control over Wexford's approval process.

3

transferred to the Jessup Pre-Release Unit, and was no longer under the care of ECI staff. He was subsequently released from prison without hip replacement surgery.

With regard to the Commissioner of Correction and Warden Green, the correctional Defendants, Plaintiff makes no specific claims against them. In addition, correctional staff in this case played no part in the decisions regarding the nature of Plaintiff's medical care, nor did they prevent delivery of medical services.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court

4

must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *DeLonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844.

Plaintiff's complaints of hip pain were far from ignored. Prescribed in response to his complaints were x-rays, MRI, pain medication, walking aids, and meal delivery. Medical Defendants took precautions to alleviate as much pain as possible for Plaintiff's painful and serious medical condition. The fact that the care provided stopped short of joint replacement surgery does not mean the care provided was constitutionally inadequate. The undisputed evidence presented by medical Defendants establishes proper, conservative medical treatment was provided to Plaintiff. Medical Defendants are therefore entitled to summary judgment in their favor.

In light of the absence of any allegations against correctional Defendants suggesting they engaged in any wrongful conduct with respect to Plaintiff's medical care, the complaint will be dismissed as to them.

A separate Order follows.

JULY 13, 2010
Date

_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE